**In re FRENCH BOUREKAS, INC., Debtor.**

**Bankruptcy No. 93 B 43470 (TLB).**

United States Bankruptcy Court, S.D. New York.

July 11, 1995.

Zetlin & De Chiara by Raymond T. Mellon, New York City, for United Capital Corp.

Gerard Zwirn, New York City, for debtor.

### MEMORANDUM DECISION ON FEES ASSESSED AS SANCTION

TINA L. BROZMAN, Bankruptcy Judge.

About six months ago I issued an amended decision awarding sanctions against Gerard Zwirn, Esq., the debtor's counsel, and in favor of United Capital Corporation ("UCC"), the mortgagee of the debtor's landlord, pursuant to 28 U.S.C. § 1927 and the inherent power of this court. *In re French Bourekas, Inc.*, 175 B.R. 517 (Bankr.S.D.N.Y.1994). In the order which followed, I directed UCC to file an affidavit of costs and expenses which it had incurred by virtue of the sanctionable conduct. I also provided an opportunity for Zwirn to oppose the fees sought by UCC. Familiarity with that decision and its corresponding order is assumed. This memorandum is issued only to explain the basis for the amount of attorneys' fees which I am awarding.

■ As a threshold matter, I need to dispose of Zwirn's argument that I have no core jurisdiction to issue this award. I have previously determined that this motion for sanctions is core and that the dismissal of the debtor's chapter 11 case did not divest me of that jurisdiction. Indeed, Zwirn unsuccessfully attempted to appeal my interlocutory order to that effect. Judge Haight, ruling on that premature appeal, stated that "[t]he voluntary dismissal of the Bourekas chapter 11 proceeding, unquestionably a core proceeding, did not strip Judge Brozman of jurisdiction to impose sanctions for conduct during the course of the case." *Zwirn v. United Capital Corp.*, 1995 WL 77959 *1 (S.D.N.Y. February 24, 1995). Moreover, I am not the first judge in this district to hold that the power to sanction parties for conduct in a core matter is itself core. That was so stated some ten years ago in *In re Emergency Beacon Corp.*, 52 B.R. 979, 987 (S.D.N.Y. 1985), *aff'd on other grounds*, 790 F.2d 285 (2d Cir.1986); *accord In re Victoria*, 51 F.3d 276 (7th Cir.1995).

■ Equally surmountable is Zwirn's second hurdle intended to prevent my reaching the merits, his argument that UCC lacks standing to seek sanctions. His theory is that UCC is precluded from obtaining an award of sanctions because it is a mortgagee of the debtor's landlord and not of the debtor. For this proposition Zwirn cites to *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983). There, a mortgagee of a building in which the debtor was a tenant sought relief from the automatic stay to add the debtor as a necessary party in a state foreclosure action. The debtor had stopped paying rent. The mortgagee believed, erroneously, that the foreclosure action was stayed. But it was not stayed by the bankruptcy because the debtor had not been named as a party. For the same reason, foreclosure would not have affected the debtor's lease. The bankruptcy judge noted that the foreclosure action was not stayed and denied relief from the stay on the grounds that the mortgagee was not a "party in interest" entitled to seek relief from the automatic stay. His decision was affirmed.

As I explained in my decision in *In re Village Rathskeller, Inc.*, 147 B.R. 665 (Bankr.S.D.N.Y.1992), *Comcoach* was driven by two facts not present in *Village Rathskeller*. First, as noted, the *Comcoach* mortgagee was not stayed from foreclosing and, second, the mortgagee had an available remedy to seek payment of rent from the debtor, appointment of a receiver in the unstayed foreclosure action. The Second Circuit had actually alluded to the power and standing of a receiver to ask for relief from the stay to enforce the terms of the lease.

In *Village Rathskeller*, in contradistinction, the mortgagee sought relief from the stay in order to foreclose the debtor's tenancy because there, just as here, the lease was sub-

ordinate to the lien of the mortgage. In addition, the debtor indicated that it was going to litigate the validity of the subordination of its lease. I determined that since a receiver had no right to foreclose, if the secured creditor were held not to be a party in interest, there would be no one with the ability to exercise the secured creditor's right to extinguish the subordinate tenancy. In addition, I noted that since the debtor had indicated that it would attack the validity of the subordination clause, it was hard to imagine how the mortgagee could be anything other than a person aggrieved. *See In re Carl H. Neuman,* 92 B.R. 598, 600 n. 4 (Bankr.S.D.N.Y.1988) (court questioning whether *Comcoach* would apply where debtor's trustee challenged the validity of the mortgage sought to be foreclosed). Accordingly, I found that the secured creditor had standing to seek relief from the stay.

*Village Rathskeller* was on all fours with the dispute between French Bourekas, Inc. ("French Bourekas") and UCC. UCC sought stay relief to foreclose the subordinate tenancy and French Bourekas contended that the subordination provision was invalid. Just as in *Village Rathskeller,* I determined that the mortgagee of the debtor's landlord had standing to seek stay relief. And if UCC had standing to seek relief so as to pursue its foreclosure proceeding then it necessarily had standing to seek sanctions for impermissible conduct of the debtor's counsel vis-à-vis UCC in conjunction with their litigation in this court.

So we turn now to the sanctions requested. UCC, because it was uncertain of the scope of my decision (which was not explicit in setting forth the parameters of what fees might be recovered by UCC), seeks reimbursement of all fees incurred in this case since the filing of the bankruptcy petition.[1] UCC does not seek, however, fees in conjunction with the adversary proceeding between the debtor and UCC; it limits its request to the contested matters in the main case. The fees sought by UCC total $45,487.50. The disbursements (which are calculated as a per-

centage of fees since it is impossible retrospectively to determine to what particular services the disbursements pertain) requested by UCC total $3,809.23. Before analyzing UCC's request any further, it is necessary to briefly address the standards which must inform my decision.

■ The purpose of 28 U.S.C. § 1927 is to deter unnecessary delays in litigation. *See Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir.1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *In re Cohoes Industrial Terminal, Inc.,* 931 F.2d 222, 230 (2d Cir.1991) ("[a] bankruptcy court may impose sanctions pursuant to 28 U.S.C. § 1927 if it finds that '[an] attorney's actions are so completely without merit as to require the conclusion that they must have been taken for some improper purpose such as delay.' ") I mention the purpose of the statute because an appropriate sanction must be framed in accordance with the deterrence which is central to the legislative intent.

A party who incurs expense by virtue of an attorney's violation may be reimbursed only for the "excess costs" occasioned by the violation, not for the ordinary costs of litigation. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 758–59, 100 S.Ct. 2455, 2460, 65 L.Ed.2d 488 (1980). This is not to say, however, that the movant is entitled to the full amount of the excess expenses, for there is always discretion on the part of the judge to assess what is necessary to deter, rather than to compensate. *See Novelty Textile Mills, Inc. v. Stern,* 136 F.R.D. 63, 76 (S.D.N.Y.1991); *cf. Eastway Construction Corp. v. City of New York,* 821 F.2d 121, 123 (2d Cir.), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987) (attorney's fee award under Rule 11 may be limited to amount thought reasonable to serve the sanctioning purpose of the rule as long as it does not fall below the bottom range of discretion).

■ From this discussion it can be seen that UCC is not entitled to its attorneys' fees in conjunction with the overall handling of the bankruptcy case. I specifically ruled

---

1. This was not the only forum in which the parties were litigating nor was it even the only bankruptcy case in which the parties were spar-

ring. The details are set forth in my amended decision sanctioning Zwirn.

**698**

that the petition was *not* filed in bad faith, thus, there is no reason to award fees for anything other than the excess costs occasioned by the sanctionable conduct and the reasonable costs of seeking sanctions. Whereas UCC's counsel competently represented its interests and thoroughly explained its positions to the court in the multiple contested matters between the parties, those services are properly paid by UCC, not Zwirn. I have calculated the excess costs and the fees incurred in seeking sanctions at some $27,000. The bulk of this time, however, is composed of the fees incurred in seeking sanctions. The excess costs consist of the time spent at the hearing which was adjourned based on Zwirn's misrepresentation and the time expended in responding to the debtor's motion to dismiss. I include the motion to dismiss as an excess cost in that it was made because Zwirn knew that he could not prove what he had repeatedly asserted to me—that the debtor was actively seeking refinancing for the owner's mortgage. Had Zwirn not obtained his adjournment based on a misrepresentation to me, there would have been no call for the motion to dismiss to which UCC was forced to respond. By my calculation, that excess time amounts to $3,277.50 and the time spent seeking sanctions is valued at $23,722.50. This latter number is very high, particularly in relation to the excess costs engendered by Zwirn's sanctionable conduct.

Taking into account the deterrent rather than the compensatory nature of 28 U.S.C. § 1927 as well as what I believe to be a necessary reasonable relationship between the excess costs and the time spent seeking sanctions, I am assessing against Zwirn the sum of $10,000 without any additional award for disbursements.

SETTLE ORDER consistent with this decision.