**In re Ruby G. EMANUEL, Debtor.**

**No. 97 B 44969(SMB).**

United States Bankruptcy Court, S.D. New York.

June 30, 2009.

Richard Tanenbaum, Esq., Brooklyn, NY, for Kenneth Heller.

Susan Harmon, Esq., Hoboken, NJ.

Diana G. Adams, United States Trustee, New York, NY (Greg Zipes, of Counsel), trustee.

Wilmer Cutler Pickering Hale & Dorr LLP, New York, NY (Andrew Goldman, of Counsel), for Jacoby & Meyers.

Windels Marx Lane & Mittendorf, LLP, New York, NY (Howard L. Simon, of Counsel), for Trustee.

## MEMORANDUM DECISION AND ORDER DENYING REQUEST TO TESTIFY BY VIDEOCONFERENCE AND FOR RELATED RELIEF

STUART M. BERNSTEIN, Chief Judge.

Kenneth Heller, a disbarred attorney seeking to recover legal fees in this case,

has requested the right to testify by video teleconference at the hearing to determine his claim. Heller appears to be a fugitive from justice, and fears that if he attends the hearing, he will be arrested. For the reasons that follow, his request is denied.

## BACKGROUND

Heller represented the debtor pre-petition in connection with two wrongful death actions involving her deceased husband. After the debtor filed a chapter 7 petition on July 28, 1997, Alan Nisselson, the chapter 7 trustee, retained Heller (and Samuel Hirsch) as special personal injury counsel. The wrongful death actions were tried before a jury in 1999, resulting in a verdict of roughly $25 million. The trial judge subsequently reduced the amount of the verdict to $7.6 million, and following the entry of judgment, both parties appealed. In May 2004, the Appellate Division, First Department, reversed the judgment and ordered a new trial. *See Emanuel v. Sheridan Transp. Corp.*, 10 A.D.3d 46, 779 N.Y.S.2d 168 (N.Y.App.Div.2004).

Approximately one month later, Heller was disbarred. The triggering charges arose from three cases unrelated to the present one. Following an evidentiary hearing, the referee sustained the majority of the charges, and recommended a two-year suspension. The Appellate Division disagreed. Citing Heller's pattern of misconduct and his "utter contempt for the judicial system" and "unprofessional behavior," the court concluded that he should be disbarred rather than suspended:

> In light of the cumulative evidence of respondent's 24-year history of sanctions, his perverse and persistent refusal to accept adverse rulings, reflective of an utter contempt for the judicial system, and his consistent, reprehensible, unprofessional behavior, which has included screaming at, threatening and

disparaging judges, adversaries and experts, intentionally defying court rulings, and disrupting and thwarting proper legal process through both physical and verbal aggression, we are of the opinion that the appropriate sanction here is disbarment.

*In re Heller*, 9 A.D.3d 221, 780 N.Y.S.2d 314, 319 (N.Y.App.Div.), *leave to appeal denied*, 3 N.Y.3d 607, 785 N.Y.S.2d 25, 818 N.E.2d 667 (2004).

The trustee then retained Jacoby & Meyers ("Jacoby") as substitute personal injury counsel. Jacoby tried, without success, to obtain the files from Heller voluntarily, and eventually procured an order directing him to turn over his files. Heller failed to comply, and after several rounds of motion practice, the state court held Heller in contempt (the "Contempt Order"). The Contempt Order, dated January 26, 2007, provided, in pertinent part, as follows:

> Mr. Heller may purge himself of the contempt by turning over all of his records in this matter to [Jacoby] within 20 days from today. Failure to comply will result in a warrant to be issued for Heller's arrest and production before this Court for sentencing and/or fine.

Heller failed to purge himself of the contempt. As a consequence, state Supreme Court Justice Silver issued a warrant for Heller's arrest on February 26, 2007. Heller was arrested that same day, and subsequently sentenced to 30 days in jail and a $10,000 fine (the "Sentencing Order"). The Appellate Division granted an interim stay limited to Heller's incarceration, but the interim stay was dissolved when his motion for a stay pending appeal was denied on May 8, 2007. On January 29, 2009, the Appellate Division affirmed the Contempt Order and the Sentencing Order, stating that Heller's failure to comply with successive orders directing

him to turn over his files to Jacoby caused "resulting prejudice to plaintiff's right to a new trial in this action for maritime wrongful death." *Emanuel v. Sheridan Transp. Corp.*, 58 A.D.3d 583, 870 N.Y.S.2d 912, 913 (N.Y.App.Div.2009).

In the meantime, Jacoby settled the debtor's wrongful death action for $3,650,000. On August 18, 2008, the trustee filed a motion to approve the settlement pursuant to Fed. R. Bankr.P. 9019(a). (ECF Doc. # 27.) The trustee also sought authority to pay Jacoby its one-third contingency fee and a determination that Heller was not entitled to any fee. Heller objected to the settlement, and sought an award of "fees (and reimbursement of expenses) in an amount that [the Court] deems appropriate." (ECF Doc. # 29.)

By order dated June 15, 2009, the Court scheduled a July 1st evidentiary hearing on Heller's claim for compensation. (ECF Doc. # 89.) On Friday, June 29, 2009, at 6:35 p.m., Susan Harmon, one of Heller's attorneys, sent a fax to the Court demanding, *inter alia,* that Heller be permitted to testify by video teleconference pursuant to Fed.R.Civ.P. 43(a), and that the hearing be adjourned for between ten and twenty days, *inter alia,* to allow Heller to locate and set up video teleconferencing in an out-of-state location.

The request was prompted by fear of Heller's arrest. According to Harmon, "Mr. Heller is an 80 year old disabled veteran. He should not be subjected to 30 days imprisonment (nor should anyone else his age or with his disability)." In the alternative, Harmon requested that I "issue an order protecting Mr. Heller from arrest, imprisonment and fine while he appears in New York to testify, including his travel into and departure from New York on the date of testimony" as well as the day before and after his testimony.

## DISCUSSION

Rule 43(a) of the Federal Rules of Civil Procedure provides:

At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise. *For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.*

Emphasis added.

The 1996 advisory committee notes explain how the rule is intended to operate. Live testimony in open court is preferred:

The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition. Transmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial.

To overcome the requirement of in-court testimony, a party or witness must show good cause and compelling circumstances. According to the advisory committee notes, these are likely to arise when a witness is unable to attend for unexpected reasons, such as an accident or illness, remains able to testify from another location, and remote transmission is preferable to rescheduling the trial. In addition, good cause and compelling circumstances may arise when an unexpected need for the testimony of a remote witness arises during trial. But "[o]ther possible justifications for remote transmission must be approached cautiously."

Finally, one who foresees the need for the remote transmission of testimony must promptly bring the circumstances to the attention of the court and the other parties:

> A party who could reasonably foresee the circumstances offered to justify transmission of testimony will have special difficulty in showing good cause and the compelling nature of the circumstances. Notice of a desire to transmit testimony from a different location should be given as soon as the reasons are known, to enable other parties to arrange a deposition, or to secure an advance ruling on transmission so as to know whether to prepare to be present with the witness while testifying.

Heller has failed to demonstrate good cause and compelling circumstances to overcome the requirement of testifying in open court. Although Harmon states that he is 80 years old and disabled, she concedes that he is able to testify from an out-of-state location. Furthermore, his inability to travel to the Bowling Green Courthouse is not due to unexpected or health-related reasons. In fact, Heller is prepared to come here if he is granted immunity from arrest. Rather, Heller is a fugitive, guilty of contempt, who fled New York to avoid the punishment meted out by a state trial judge and affirmed unanimously by the Appellate Division. The only justification he offers is his fear of arrest, and his reason is neither good nor compelling. *See In re Henson,* 289 B.R. 741, 743 (Bankr.N.D.Cal.2003)(denying motion of debtor, who left California prior to being sentenced on criminal charges, to appear at trial through a contemporaneous video transmission from Canada). The Court has also considered Heller's other arguments, and concludes that they lack merit.

Finally, Heller's request for an adjournment is also denied. It was predicated on the need to arrange the video teleconferencing, but Heller must testify in Court.

So ordered.