**In re Ruby G. EMANUEL, Debtor.**

**No. 97–44969 (SMB).**

United States Bankruptcy Court,
S.D. New York.

Jan. 29, 2010.

———

Wilmer Cutler Pickering Hale and Dorr LLP, Andrew N. Goldman, Charles C. Platt, Melanie J. Dritz, of Counsel, New York, NY, for Jacoby & Meyers LLP.

Richard Tanenbaum, Brooklyn, NY, Susan Harmon, Hoboken, NJ, for Kenneth Heller.

Windels Marx Lane & Mittendorf, LLP, Howard L. Simon, of Counsel, New York, NY, for Trustee.

Office of the United States Trustee, Greg Zipes, of Counsel, New York, NY.

## MEMORANDUM DECISION AND ORDER REGARDING COURT'S *SUA SPONTE* MOTION FOR SANCTIONS

STUART M. BERNSTEIN, Chief Judge.

On June 23, 2009, the Court issued an order directing Kenneth Heller and Susan Harmon, Esq. to show cause why they should not sanctioned pursuant to the Court's inherent authority (and, in Harmon's case, also pursuant to 28 U.S.C. § 1927) for making a motion before me to transfer this bankruptcy case to the United States District Court. (*See Order Denying Transfer Motion and Clarifying Notice of Court's Sua Sponte Order to Show Cause,* dated June 25, 2009 (*"Sanctions OSC"*) (ECF Doc. # 95).) Harmon and Heller sought several adjournments, but never offered any justification for their actions. The Court now concludes that Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), the chapter 7 trustee's law firm, is entitled to an award of fees in the sum of $4,849.00 against Heller and Harmon, and Jacoby & Meyers ("J & M"), the chapter 7 trustee's special counsel, is entitled to an award of fees and expenses in the aggregate sum of $5,890.75 against Harmon only.

## BACKGROUND

The background facts relating to this case are discussed in this Court's prior opinions, *In re Emanuel,* 406 B.R. 634 (Bankr.S.D.N.Y.2009) (*"Emanuel I"*) and *In re Emanuel,* 422 B.R. 443, 2009 WL 4975672 (Bankr.S.D.N.Y.2009) (*"Emanuel*

*II* ''). I assume familiarity with those decisions, and limit the discussion to the facts necessary to resolve the sanctions motion.[1]

## A. State Court Wrongful Death Litigation

The debtor's husband was employed as a longshoreman at the Brooklyn Navy Yard. While working on a dry-docked vessel, he suffered a severe accident that left him a quadriplegic, and ultimately caused his death. Prior to filing for bankruptcy protection, the debtor retained Heller to commence a wrongful death action in state court against, *inter alia,* the owner of the vessel on which Mr. Emanuel was working at the time of the accident. After the debtor filed for bankruptcy on July 28, 1997, the chapter 7 trustee, Alan Nisselson, Esq. ("Trustee"), retained Heller as special personal injury counsel to the estate.

Heller sued the vessel owner and others on the theory that Mr. Emanuel was a seaman under the Jones Act, and the vessel was unseaworthy, a strict liability doctrine. He also brought claims under the New York Labor Law and in negligence. Prior to trial, the state court dismissed the Jones Act and New York Labor law claims, and Heller tried the matter as a negligence case. The issue of seaworthiness was nevertheless submitted to the jury, which found the barge to be unseaworthy and the defendants to be negligent. The jury awarded $24,967,660 in damages, but the trial court reduced the award to $7,613,566, which the debtor accepted under protest. Following the entry of judgment, both sides appealed.

In May 2004, the Appellate Division reversed and remanded for a new trial.

*Emanuel v. Sheridan Transp. Corp.,* 10 A.D.3d 46, 779 N.Y.S.2d 168 (N.Y.App.Div. 2004). The court concluded that Mr. Emanuel was a longshoreman, not a seaman, *id.* at 172–73, and the debtor could only recover in negligence. *Id.* at 173. As a consequence, the trial court had erred by submitting the issue of seaworthiness to the jury and intertwining the issue of seaworthiness and negligence in its charge. *Id.* at 173–74. One Appellate Division judge dissented in part, opining that there was no evidence of the vessel owner's negligence in the record, and the case should be dismissed. *Id.* at 178–80.

## B. Retention of J & M and Their Efforts to Obtain Heller's Files

Approximately one month after the Appellate Division reversal, Heller was disbarred based on charges unrelated to his representation of the debtor or the estate. *See In re Heller,* 9 A.D.3d 221, 780 N.Y.S.2d 314 (N.Y.App.Div.), *leave to appeal denied,* 3 N.Y.3d 607, 785 N.Y.S.2d 25, 818 N.E.2d 667 (2004). The Trustee retained JM as substitute special counsel on January 24, 2005. (ECF Doc. # 23.) JM requested that Heller turn over his files related to the action, but he refused. Heller was eventually held in contempt, and sentenced to imprisonment based on his refusal to turn his files over. Fearful of arrest, he has since absented himself from New York. *See Emanuel I,* 406 B.R. at 636.

## C. The Settlement

On August 18, 2008, the Trustee agreed to settle the debtors personal injury action for $3,650,000.[2] Heller, represented by

1. This opinion refers to several transcripts. For ease of reference, each transcript is identified by date followed by "Tr." and the page. For example, "12/12/08 Tr. at 8" refers to

page 8 of the transcript of the hearing held on December 12, 2008.

2. *Trustee's Motion for: (I) Approval of Settlement of the Debtor's Wrongful Death Actions*

Sanford P. Rosen & Associates, P.C., objected. (*See Objection of Kenneth Heller to the Trustee's Motion for Approval of Settlement of the Debtor's Wrongful Death Actions,* dated Sept. 23, 2008 (ECF Doc. # 29).) Heller contended that the Trustee had failed to satisfy his burden under Rule 9019 of the Federal Rules of Bankruptcy Procedure. (*Id.* ¶¶ 25–28.) He also asserted that the settlement was inadequate because the debtor would be entitled to pre-judgment interest, and verdicts in cases involving quadriplegia are usually much higher. (*Id.* ¶¶ 29–31.) Heller brushed aside the possibility that the case might be lost, contended that any competent admiralty counsel could retry the case easily, and charged that J & M lacked the competency and experience to handle it. (*Id.* ¶¶ 32–34.) Finally, Heller argued that the Court should deny fees to J & M, (*id.* ¶¶ 36–38), and instead, award fees and expenses to Heller. (*Id.* ¶¶ 39–42.) Notably missing from the objection was any suggestion that the Court or any of the parties owed a special duty to the debtor as a "seaman's widow" or a "ward of admiralty" under federal maritime law.

By order dated November 10, 2008, the Court approved the settlement, and authorized the Trustee to pay a lien held by the New York State Insurance Fund in the amount of $700,000 and pay $1,550,000 to the debtor (the "Settlement Order"). (ECF Doc. # 45.) The only open issue concerned the award of the contingency fee as between J & M and Heller, who asserted a claim in *quantum meruit.* The Court reserved decision on the allocation of fees as between Heller and J & M.[3]

## D. Collateral Attacks on the Settlement Order

### 1. The Motion to Withdraw the Reference

Heller never appealed (or sought leave to appeal) from the Settlement Order. Instead, Heller and his sometime counsel, Harmon, took a variety of actions aimed at collaterally attacking the Settlement Order.

First, on December 11, 2008, they submitted a proposed order to show cause requesting, *inter alia,* that the District Court "withdraw the reference from the Bankruptcy Court in the above referenced matter, for purposes of settlement and an attorneys' fees determination, since the Bankruptcy Court refuses to recognize and apply federal maritime law to determine the reasonableness of the settlement and to protect the debtor, a seaman's widow, as a ward of admiralty." (*Order to Show Cause With Stay,* dated Dec. 12, 2008 (ECF Doc. # 52).) In addition, Harmon submitted a memorandum. (*Memorandum of Law in Support Kenneth Heller's Motion for Withdrawal of Reference and Transfer to District Court, a Stay of Proceedings and Related Relief,* dated Dec.

---

*Pursuant to Federal Rule of Bankruptcy Procedure 9019(a); (II) Approval of Allowance and Payment of Fees and Expenses of Special Personal Injury Attorneys to the Trustee Pursuant to a Contingency Fee Agreement and Under Bankruptcy Code §§ 328 and 330; (iii) a Determination of the Amount of Compensation, if any, of Kenneth Heller, Former Special Counsel to the Trustee; (iv) a Determination of the Amount of the Lien of New York State Insurance Fund; (v) Partial Payment of a Surplus to The Debtor; and (vi) Such Other relief as the*

Court Deems Just, dated August 13, 2008 (ECF Doc. # 27).

3. The Court held an evidentiary hearing on the fees on July 1, 2009, which is recounted in *Emanuel II.* The Court ultimately denied Heller's application for fees and expenses, and awarded $1,195,998.42 in fees and expenses to J & M. (*Order Denying Fees and Expenses of Kenneth Heller and Allowing Fees and Expenses of Jacoby & Meyer,* dated Jan. 11, 2010 (ECF Doc. # 131).)

13, 2008 (the *"Withdrawal Motion"*) (ECF Doc. # 55).) The Withdrawal Motion sought the appointment of District Judge Denny Chin, who had presided over a limitation of liability suit involving the same vessel 14 years earlier, to review and reject the same settlement that this Court had already approved. In addition, the Withdrawal Motion also wanted Judge Chin to preside over the division of fees between Heller and J & M. Heller argued that the relief was warranted because federal maritime law governed the entire matter, and this Court refused to apply federal maritime law in determining the reasonableness of the settlement.[4] The proposed order to show cause also requested a stay of "all actions and proceedings in the Bankruptcy Court" until conclusion of all proceedings in the District Court.

The submission of the proposed order to show cause to the Bankruptcy Court was procedurally improper. The party seeking to withdraw the reference must file the motion in the Bankruptcy Court, and then file a copy of the motion in the District Court. Bankr.S.D.N.Y.R. 5011–1.[5] All subsequent proceedings take place in the District Court, which alone is vested with the power to withdraw the reference. 28 U.S.C. § 157(d).[6] After filing the Withdrawal Motion in the Bankruptcy Court, Heller and Harmon should have immediately filed the Withdrawal Motion in the District Court, and presented the proposed order to show cause to the District Court judge assigned to the matter. In any event, I conducted a hearing the next day, advised Harmon that I would treat her motion as one for a stay pending her application to the District Court, and denied the stay for the reasons stated on the record. (12/12/08 Tr. at 8–9 (ECF Doc. # 132); *Endorsed Order*, dated Dec. 12, 2008 (ECF Doc. # 52).)

The Withdrawal Motion was eventually docketed in the District Court on December 23, 2008. (*See* ECF Doc. # 1, filed Jan. 7, 2009, in Civ. Action No. 08–11175 (S.D.N.Y.).)[7] On January 27, 2009, Dis-

---

4. According to the Withdrawal Motion, the Court had failed to recognize the debtor's status as a "seaman's widow," and hence, a "ward of admiralty," which required the Court to subject the proposed settlement to heightened scrutiny. The Court "was duty-bound to ensure that the debtor, as a seaman's widow and a ward of admiralty, was protected in this action, had obtained adequate legal representation, and was entering into a settlement that was fair and reasonable under maritime notions of such principles." (*Withdrawal Motion* at 18.)

5. Local Bankruptcy Rule 5011–1 states:
 A motion for withdrawal of the reference shall be filed with the Clerk of the Bankruptcy Court. The movant is then required to file with the Clerk of the District Court a copy of the motion, the receipt for payment of the filing fee, three copies of the District Court Civil Cover Sheet, and a copy of any corporate ownership statement previously filed pursuant to Bankruptcy Rule 1007(a) or 7007.1. The movant shall then file with the Clerk of the Bankruptcy Court a state-

ment indicating the Civil Case Number and District Court Judge assigned to the matter. All subsequent papers relating to the motion shall be filed with the Clerk of the District Court.

6. Section 157(d) states:
 The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

7. The Sanctions OSC indicated that Heller and Harmon had filed a second motion to withdraw the reference in the District Court. In retrospect, it appears that there was only one Withdrawal Motion made in this Court, and thereafter docketed in the District Court.

trict Judge Deborah Batts, to whom the motion was assigned,[8] issued an order denying the Withdrawal Motion. (*Order of U.S. District Court Judge Deborah A. Batts Denying the Motion to Withdraw for Untimeliness*, dated Jan. 27, 2009 (ECF Doc. # 65).) Judge Batts concluded that the request was untimely because it was only made after the Bankruptcy Court had overruled Heller's objections and approved the settlement "in an obvious attempt to gain a more favorable forum and essentially overturn the Bankruptcy's [sic] Court's ruling." (*Id.* at 4.)

### 2. Heller's Proposed Counter–Order

While the Withdrawal Motion was pending, the settling defendants, fearful of dual liability as a result of possible charging liens, insisted on additional protection. On December 17, 2008, the Trustee settled a proposed order that would discharge the settling defendants from any liability either to Heller or J & M upon payment of the settlement to the Trustee. (ECF Doc. # 53.)

Heller submitted a proposed counter order (the "Counter–Order")[9] through his new (and fourth) attorney, Richard Tanenbaum, Esq. The Counter–Order bore little connection to the Trustee's proposed order or to any relief that the Court had ever granted. It contained eight pages of "Whereas" recitals, *i.e.*, "findings," that the Court had never made. These included that various orders issued by the state court were defective (for a variety of reasons having nothing to do with the bankruptcy proceedings); J & M had all the documents it needed to settle the case in the form of the publicly available Appellate Division Record on Appeal; unidentified maritime attorneys refused to assist J & M unless Heller was involved; J & M had put only 129 hours in the case; J & M and the defendants' attorneys; Hill, Betts & Nash, made misrepresentations to this Court; J & M failed to disclose material information to the debtor; and with the exception of the Record on Appeal, Heller's records had been destroyed by a flood.

The decretal paragraphs were equally divorced from the reality of anything that had occurred. The Counter–Order imposed three distinct stays: (1) a stay against the debtor, J & M and the Sheriff of New York City from prosecuting or enforcing the contempt orders issued against Heller, (2) a stay in favor of the debtor against the payment of any legal fees to J & M on account of any appellate work or other litigation activity against Heller, and (3) a stay against the continuation of all proceedings in this Court pending the District Courts disposition of the Withdrawal Motion. Finally, the Counter–Order declared that this Court lacked jurisdiction to extinguish maritime claims absent Heller's consent, which he did not give. (*Counter–Order* at 8.)

The obvious aim of the Counter–Order was to obtain the same relief sought through the Withdrawal Motion rather

The discrepancy is not material to the issues raised by the Sanctions OSC.

**8.** According to the District Court's docket sheet, Judge Chin declined the case as not similar, and it was returned to the wheel. (*See* ECF Unnumbered Doc. Entry, filed Jan. 7, 2009, in Civ. Action No. 08–11175 (S.D.N.Y.).)

**9.** *Counter–Order Staying all Bankruptcy Court Proceedings and Related Actions Pending Hearing and Determination of Creditor Kenneth Heller's Order to Show Cause to Transfer Enitre [sic] Emanuel Case to United States District Court, Southern District of New York, Filed in Heller v. Emanuel et al; 08–cv–11175 on December 23, 2008,* filed on Dec. 24, 2008 (ECF Doc. # 60).

than reflect the disposition of a motion. Unpersuaded by the attempt, I signed the Trustees proposed order on December 31, 2008 (ECF Doc. # 61), adding the following notation:

"[T]he Court has considered the proposed counter order submitted by Kenneth Heller, and concludes that (1) it does not accurately reflect the disposition of the relief requested by the Trustee, (2) imposes a stay which was previously denied, and (3) includes relief which, to the extent not previously granted or denied, should be sought by motion and not by inclusion in a proposed counter order relating to a different motion."

On January 21, 2009, Heller and Harmon filed a belated motion for leave to appeal from the December 31, 2008 order. (ECF Doc. # 64.) They argued, *inter alia*, that this Court had erred in approving the settlement, (*id., Affidavit of Kenneth Heller in Support of Motion*, sworn to Jan. 19, 2009 ("*Heller Affidavit*"), ¶¶ 4, 7), and deprived the debtor of the additional protections due to her as a "seaman's widow" and a "ward of admiralty." (*Id., Heller Affidavit* ¶ 5.) Once again, Heller sought to stay the bankruptcy proceedings. (*Id., Heller Affidavit* ¶¶ 66–67.) District Judge George Daniels denied the motion on February 27, 2009, and denied Heller's motion for reconsideration by order dated March 24, 2009. (*Chapter 7 Trustee's Opposition to the Motion of Kenneth Heller to Transfer Proceedings to the District Court*, dated June 16, 2009, Ex. A (ECF Doc. # 91).)

### 3. The Transfer Motion

Undeterred by the denial of the Withdrawal Motion, Harmon and Heller made an untitled motion (the "Transfer Motion") that triggered the Sanctions OSC. (*See* ECF Doc. # 87.) [10] They asked this Court to transfer this "entire action" to the District Court and to stay all proceedings pending the hearing and determination of the motion and any appeals. Although not mentioned in the Notice of Motion, the Heller Transfer Affidavit launched yet another collateral attack on the settlement citing familiar grounds. Heller argued that the settlement should be vacated, (*Heller Transfer Affidavit* ¶ 12, p. 4 of 55), because everyone involved in the case— "Jacoby & Meyers L.L.P., Chapter 7 Bankruptcy Trustee, Mr. Nisselson, U.S. Trustee, Mr. Zipes, Hills, Betts & Nash [and] Judge Bernstein"—failed to comply with "the compulsory requirements of the Federal Maritime Law obligation to fully and impartially inform the widow of her maritime law right." (*Id.* ¶ 9, p. 4 of 55.)

The Transfer Motion attempted to distinguish itself from the Withdrawal Motion. It asserted that, "[t]his motion to transfer differs from a previous motion to transfer because it addresses the charade of confusion & concealment by the shipowner who failed to inform the maritime widow Emanuel, of her rights pursuant to the uniform Federal Maritime Law."

---

**10.** The compilation of the Transfer Motion is confusing. The Transfer Motion consists of 55 pages in the aggregate. The Notice of Motion covers pages 1 and 2, and the *Affidavit of Kenneth Heller,* unsigned and undated ("*Heller Transfer Affidavit*"), appears next at pages 3 and 4. Pages 5 through 39 (numbered 1 through 34) resemble a memorandum of law that includes a meandering, irrelevant discourse on maritime law and a discussion of the errors made in the case. Page 40, titled "Conclusion," appears to be the last page of Heller's affidavit, and includes Heller's and the notary's signatures. The balance of the document consists of the service list, the reprint of an internet article, a lengthy extract from a hornbook on maritime law and an affirmation of service executed by Harmon.

(*Transfer Motion* at 39 of 55.) Yet the Transfer Motion tarred everyone involved in the case—the Court, the United States Trustee, the chapter 7 trustee and counsel—with the same charge, and made many of the same arguments and sought the same relief as the Withdrawal Motion: the District Court should take over the case, the settlement should be vacated because the parties and the Court had failed to comply with the compulsory requirements of the federal maritime law to inform the widow of her maritime law rights, (*id.* at 4–5 of 55), and all matters should be stayed in the Bankruptcy Court pending the final disposition of the Transfer Motion. (*Heller Transfer Affidavit* ¶ 2(b), p. 3 of 55.) Heller and Harmon also argued that notwithstanding the state court orders, J & M was not entitled to Heller's files, and the Record on Appeal provided all of the files that J & M needed. (*See Transfer Motion* at 10 of 55.)

The Trustee filed opposition. (*Chapter 7 Trustee's Opposition to Motion of Kenneth Heller to Transfer Proceedings to the District Court*, dated June 16, 2009 (ECF Doc. # 91).) He began by recounting the "long and tortured history of Heller's involvement with this bankruptcy case," (*id.* ¶ 1; *see* ¶¶ 3–14), and then raised four specific objections: (1) the Transfer Motion sought the same relief as the Withdrawal Motion, which the District Court had previously denied, (2) the Transfer Motion was untimely for the reasons expressed by Judge Batts—the Court had already approved the settlement (and moreover, the funds had been disbursed), (3) the argument that this was an admiralty proceeding beyond of this Court's jurisdiction was frivolous, and (4) Heller's statement that the Transfer Motion was filed to protect the rights of the debtor was patently false. Heller's wrongful refusal to turn over his files and his efforts to derail the settlement showed that he was motivated by self-interest without regard to the debtor's best interests. (*Id.* ¶¶ 15–18.)

J & M also opposed the Transfer Motion. (*Affidavit in Opposition [of Lawrence D. Lissauer*], sworn to June 16, 2009 ("*First Lissauer Affidavit*") (ECF Doc. # 93).) The affiant apologized for the sometime rambling nature of his submission, (*id.* ¶ 42), which I attribute to the understandable frustration that the Transfer Motion had unleashed. In general, it detailed some of the history in the federal and state courts, raised many of the same points as the Trustee, and charged Heller and Harmon with engaging in a pattern and practice of frivolous litigation and relitigation of the same issues in several courts, making false and fraudulent statements to the Court, forum shopping and burdening the courts as well as the parties who were forced to deal with their brand of "recreational litigation." (*Id.* ¶ 11.) Mr. Lissauer called their conduct contemptuous, (*id.* ¶ 2), and argued that they should be sanctioned. (*Id.* ¶¶ 15–16, 37, 39.)

## E. The Sanctions OSC

Harmon had selected a return date of June 23, 2009 for the Transfer Motion, but neither she nor Heller appeared. As a consequence, the Court denied the Transfer Motion and issued the Sanctions OSC directing Harmon and Heller to show cause why they should not be sanctioned pursuant to the Court's inherent authority, and in Harmon's case, also pursuant to 28 U.S.C. § 1927. The Sanctions OSC set forth the background and basis for potential sanctions, and scheduled a hearing for July 28, 2009.

The Sanctions OSC generated a series of requests for extensions and adjournments from Heller and Harmon, their

standard operating procedure whenever any deadline approached. (*See* ECF Doc. ## 40, 43, 52, 60, 62 (at p. 26), 82, 100, 103, 110.) By letter dated June 26, 2009, Harmon requested, *inter alia,* an adjournment of the hearing. (ECF Doc. # 100.) She gave three reasons: (1) service was defective; (2) she demanded trial by jury, adding that if this was not supported by the law, I should "overrule or reverse all prior caselaw and statutes to the contrary;" and (3) she needed time to retain counsel. (*Id.* at 7–8.)

Heller followed with his own request for a two-week adjournment on July 6, 2009. (ECF Doc. # 103.) According to Heller, Harmon was suffering "from the *sequalae* resulting from severe brain damage she suffered as a child of 13 in a head on automobile collision." If she failed to recover, she would seek to withdraw and be replaced by another attorney. I denied Heller's request because I would not accept a letter request for a nonconsensual adjournment, and Heller was already represented by Richard Tanenbaum, Esq. It was, therefore, unnecessary for Harmon to withdraw as his attorney.

Nevertheless, on the July 28th return date, I received information that Harmon had been and might still be hospitalized at the Jersey City Medical Center. (7/28/09 Tr. at 3 (ECF Doc. # 126).) During a break, counsel for J & M, the Trustee and Heller each tried to locate Harmon. J & M's counsel, Michael Feldman, Esq., called the hospital and learned that Harmon had been discharged on July 24th. (*Id.* at 4.) Michael Gaier, Esq., appearing for Heller on this occasion, called his client, but Heller refused to disclose Harmon's whereabouts because of her "critical" condition. (*Id.* at 5.) Finally, the Trustee's attorney, Regina Griffin, Esq., called Harmon's number, Heller answered the phone, and when Griffin asked Heller about Harmon's

whereabouts, Heller informed her "in a very angry voice . . . it was none of my 'expletive' business." (*Id.* at 7.)

Given the evidence of Harmon's recent hospitalization, I granted the adjournment to August 11th originally sought by Heller in his July 6th letter. I added that unless I received evidence on the adjourned date of her incapacity, I intended to decide the Sanctions OSC on the papers. (*Id.* at 6.)

On August 7, 2009, Heller made another request to adjourn the August 11th hearing. (ECF Doc. # 123.) Heller proffered two reasons. First, his own lawyer, Richard Tanenbaum, said he would not appear on the return date despite my denial of his motion to withdraw, and Heller needed time to retain another lawyer. Second, Harmon was still recuperating.

Harmon responded to the Sanctions OSC on August 10, 2009. (*See Affirmation in Support of Susan Harmon's Application of Court's Sua Sponte Order to Show Cause Pursuant to 28 USC § 1927 and "Inherent Power",* dated Aug. 10, 2009 (ECF Doc # 124).) She did not offer a substantive response, but instead, requested a five-month adjournment of the August 11, 2009 hearing. She stated that she had been hospitalized and was recuperating. (*Id.* ¶ 4.) She also represented that she had a doctor's letter explaining her medical condition, which she asked the Court to review confidentially and *in camera,* and return immediately thereafter. (*Id.* ¶ 6–7.) She did not, however, provide the letter to the Court.

Harmon did not appear on the adjourned return date, but Tanenbaum did. Tanenbaum had not submitted opposition to the Sanctions OSC, and appeared solely to make an oral application to withdraw as counsel to Heller. (8/11/09 Tr. at 3 (ECF Doc. # 125).) I denied the application without prejudice, and directed Tanenbaum to make the motion on notice to

Heller. Harmon failed to appear, but counsel for J & M informed me that she was actively litigating this same case in the New York Court of Appeals, implying that she was not incapacitated. (*Id.* at 4.)

In fact, the evidence showed that Harmon was functioning fully as an attorney during the period of her supposed incapacity. On July 30, 2009, six days after her release from the hospital, she signed a 38 page submission incorporating Heller's proposed findings of fact and conclusions of law relating to the fee hearing. (*Creditor Kenneth Heller's Memorandum in Support of Post Trial Findings of Fact and Conclusions of Law to Fix Attorney Compensation,* dated July 30, 2009 (ECF Doc. # 118).) Six days before the adjourned hearing on the Sanctions OSC, Harmon submitted an *Affidavit of Timeliness Pursuant to 22 NYCRR 500.22[b] 2,* dated Aug. 5, 2009 (*see* ECF Doc. # 121) to the New York Court of Appeals, in which she argued that federal maritime law trumps the time requirements for filing papers in state court, (*id.* ¶¶ 6–11), and accused J & M and other unnamed attorneys of mail fraud, wire fraud, grand larceny, conspiracy, abuse of process, libel, slander and the use and abuse of New York's unconstitutional contempt laws. (*Id.* ¶ 12.) She did not argue to the Court of Appeals that she was unable to comply with that Court's filing requirements because she suffered from a mental or physical condition that rendered her unable to do so.

## DISCUSSION

### A. Due Process

■ Before considering the question of sanctions, I address a preliminary issue. The person facing possible sanctions is entitled to due process. The extent of those rights depends on the size of the sanction, whether it is intended to be compensatory or punitive, whether it is payable to the court or the injured party, whether it is based on past wrongful conduct or intended to compel future compliance and whether the respondent has the chance to purge the sanction. *Mackler Productions, Inc. v. Cohen,* 225 F.3d 136, 142 (2d Cir.2000). At a minimum, the respondent is entitled to notice of the authority for the sanctions, notice of the specific conduct or omission that forms the basis of possible sanctions and the opportunity to respond. *Id.* at 144; *In re 60 East 80th Street Equities, Inc.,* 218 F.3d 109, 117 (2d Cir.2000). "[A] full evidentiary hearing is not required; the opportunity to respond by brief or oral argument may suffice." *60 East 80th Street Equities, Inc.,* 218 F.3d at 117; *see Klein v. Ulster Sav. Bank (In re Stein),* 127 F.3d 292, 295 (2d Cir.1997)(discussing Federal Bankruptcy Rule 9011).

■ Here, the sanctions under consideration are limited to reimbursing JM and the Trustee for their reasonable attorney fees and expenses incurred in opposing the Transfer Motion. This is the mildest form of sanctions. *See Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1066 (2d Cir.1979); *Fleming v. Deaconess Hosp.,* No. 02CV934C (SC), 2004 WL 2011474, at *2 (W.D.N.Y. Sept. 9, 2004). Although such sanctions punish past conduct and cannot be purged, this is due to their essential purpose: to compensate for an injury that has already occurred and cannot be undone. Accordingly, Harmon and Heller were entitled to no more than the minimum that due process requires.[11]

---

11. At one point, Harmon insisted on a jury trial, and asked me to overrule contrary case law and statutes that denied her that right. She did not press the request when she asked

They received their due. The Sanctions OSC spelled out the history of the proceedings and sanctionable conduct (the filing of the Transfer Motion) as well as the basis for imposing sanctions (the Court's inherent authority and, in Harmon's case, 28 U.S.C. § 1927). Heller and Harmon had the opportunity to respond, but failed to do so. Although Harmon submitted the Transfer Motion on Heller's behalf, Heller sought an adjournment because his attorney—Tanenbaum—refused to appear on the return date. (ECF Doc. # 123.) Tanenbaum did, in fact, appear. Tanenbaum did not offer any response on the merits, and instead, made an oral application to withdraw, which was denied without prejudice. Tanenbaum's failure to oppose the Sanctions OSC is a matter between Tanenbaum and his former client.

For her part, Harmon sought a five-month adjournment, contending that she was recuperating from a mental or physical condition that she never disclosed. While she implied that her ailment rendered her unable to defend against the Sanctions OSC, her actions showed otherwise. During the same period, she prepared the proposed post-trial findings of fact and conclusions of law for submission to this Court and litigated with JM in the New York Court of Appeals. Accordingly, she failed to show that she was unable to defend against the Sanctions OSC or otherwise entitled to a five-month adjournment.

**B. Sanctions Are Appropriate**

A court has inherent authority to award reasonable attorneys' fees against a party and his attorney who have "acted in bad faith, vexatiously, wantonly, or for op-pressive reasons." *F.D. Rich Co. v. U.S. ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974); *accord Revson v. Cinque Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir.2000); *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986). In addition, under 28 U.S.C. § 1927, "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "To impose sanctions under either authority, the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." *Agee v. Paramount Communications Inc.*, 114 F.3d 395, 398 (2d Cir.1997); *accord Revson*, 221 F.3d at 79; *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir.2000); *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir.1999); *see 60 E. 80th St. Equities*, 218 F.3d at 117 ("[B]ad faith may be inferred where the action is completely without merit.").

"A claim is colorable when it reasonably *might* be successful, while a claim lacks a colorable basis when it is utterly devoid of a legal or factual basis." *Schlaifer*, 194 F.3d at 337 (emphasis in original). Examples of sanctionable conduct include "resubmitting a motion that had previously been denied"; "bringing a motion based on 'facts' the opposite of which were previously found by the court"; "making several insupportable bias recusal motions and repeated motions to reargue"; "continually engaging in obfuscation of the issues, hyperbolism and groundless presumptions in addition to insinuating that the court was

for a five-month adjournment. In any event, the Sanctions OSC did not implicate the Seventh Amendment right to a jury trial. *See Columbus Mills, Inc. v. Freeland*, 918 F.2d 1575, 1578–79 (11th Cir.1990); *Bader v. Itel Corp. (In re Itel Secs. Litig.)*, 791 F.2d 672, 676 (9th Cir.1986), *cert. denied*, 479 U.S. 1033, 107 S.Ct. 880, 93 L.Ed.2d 834 (1987).

biased"; and "waiting until the eve of trial before making a jury demand." *Keller v. Mobil Corp.,* 55 F.3d 94, 99 (2d Cir.1995)(quoting *Hudson Motors P'ship v. Crest Leasing Enterps., Inc.,* 845 F.Supp. 969, 978 (E.D.N.Y.1994)(discussing 28 U.S.C. § 1927)).

 Heller's and Harmon's actions in making the Transfer Motion warrant sanctions. At the outset, the Transfer Motion was legally meritless. This Court does not have the authority to transfer a case to the District Court; only the District Court, through its power to withdraw the reference, can transfer a case to itself from the Bankruptcy Court. *See* 28 U.S.C. § 157(d). I made this crystal clear to Harmon at the December 12, 2008 hearing, when I advised her that "I can't order the withdrawal of the reference. I can't assign this case to Judge Chin. I can't grant Mr. Heller leave to appeal. These are district court issues." (12/12/08 Tr. at 8.) The Transfer Motion was doomed to fail.

The Transfer Motion was also vexatious, and submitted for an improper purpose: the continuation of what Judge Batts had described as "an obvious attempt to gain a more favorable forum and essentially overturn the Bankruptcy's [sic] Court's ruling." Indeed, it was a replay of the Withdrawal Motion. Harmon had filed the Withdrawal Motion on behalf of Heller for the admitted purpose of procuring a District Court determination of the reasonableness of the settlement, ignoring that this Court had already approved the settlement and entered the Settlement Order. Heller did not rely on his own rights; instead, he based the motion on the debtor's so-called rights as a "seaman's widow" and "ward of admiralty," [12] and this Court's unwillingness or inability to apply federal maritime law. Harmon and Heller simultaneously requested a stay of all proceedings in the Bankruptcy Court until conclusion of all proceedings in the District Court.[13] Judge Batts denied the Withdrawal Motion as a tactical attempt to forum shop after Heller had lost in the Bankruptcy Court.

The Transfer Motion sought the same relief as the Withdrawal Motion based on substantially the same arguments. It reflected another step in Heller's and Harmon's continuing efforts to collaterally attack the Settlement Order by asserting the debtor's alleged rights as a "seaman's widow" and "ward of admiralty," and this Court's refusal (or inability) to apply federal maritime law. In both cases, Heller (and Harmon) sought (unsuccessfully) to stay the Bankruptcy Court proceedings and the consummation of the settlement.

Perhaps aware that they could not make another Withdrawal Motion, Heller made an unconvincing attempt to distinguish the Transfer Motion from the Withdrawal Motion. He argued that in contrast to the Withdrawal Motion, the Transfer Motion was directed at the ship owner's failure to respect the debtor's rights as a "seaman's widow" and a "ward of admiralty." However, the Transfer Motion leveled the same charges at everyone else involved in the case. It was an obvious attempt to repackage the same argument rejected by the District Court, reflecting another in-

---

12. Heller's and Harmon's frequent allusions to the debtor's rights under federal maritime law ignored the decision of the Appellate Division. The Appellate Division had rejected the claim that Mr. Emanuel was a seaman, and instead, determined that he was a longshoreman. As such, the debtor was not a "seaman's widow" or a "ward of admiralty" and the settlement was not subject to strict scrutiny. *Emanuel II,* 422 B.R. at 448, n. 6, 2009 WL 4975672, at *3 n. 6.

13. Heller sought similar relief, and much more, through the submission of his outlandish proposed counter order.

stance of Heller's (and Harmon's) "perverse and persistent refusal to accept adverse rulings." *In re Heller,* 9 A.D.3d 221, 780 N.Y.S.2d 314, 319 (N.Y.App.Div.2004), *leave to appeal denied,* 3 N.Y.3d 607, 785 N.Y.S.2d 25, 818 N.E.2d 667 (N.Y.2004).

## C. The Amount of Sanctions

▉▉▉▉ The same standards of compensation and reimbursement apply whether sanctions are awarded under FED. R. BANKR.P. 9011, 28 U.S.C. § 1927 or the Court's inherent power. *See Paine-Webber, Inc. v. Can Am Financial Group, Ltd.,* 121 F.R.D. 324, 334 (N.D.Ill.1988), *aff'd without op.,* 885 F.2d 873 (7th Cir. 1989). The injured party can recover those "attorney's fees incurred attributable to investigating, researching and fighting" the debtor's meritless petition as well as the fees incurred "to research, prepare and prosecute" its sanctions motion. *See id.* at 334–35. The amount to be awarded is committed to the Court's discretion. *See Ordower v. Feldman,* 826 F.2d 1569, 1575 (7th Cir.1987); *Eastway Construction Corp. v. City of New York,* 821 F.2d 121, 122 (2d Cir.), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); *In re French Bourekas, Inc.,* 183 B.R. 695, 697 (Bankr.S.D.N.Y.1995). The Court normally begins with the lodestar amount, which it may then adjust upwards or downwards. *Harb v. Gallagher,* 131 F.R.D. 381, 384–85, 389 (S.D.N.Y.1990)(adopting magistrate's report and recommendation).

▉▉▉▉ The party seeking compensatory sanctions must ordinarily provide the Court with contemporaneous time and expense records for each attorney and paralegal that specify the date, amount of time, and nature of the work performed, and must also show that the fees and expenses were reasonable and necessary. *See Wood v. Brosse, U.S.A., Inc.,* 149 F.R.D. 44, 52 (S.D.N.Y.1993). The party may also be able to satisfy its burden by submitting a sworn affidavit that provides the same information, *Mackler,* 225 F.3d at 146; *Caisse Nationale de Credit Agricole–CNCA, New York Branch v. Valcorp, Inc.,* 28 F.3d 259, 266–67 (2d Cir.1994), although courts in the Second Circuit have reduced awards not supported by contemporaneous time records by as much as 30%. *See Monaghan v. SZS 33 Assocs., L.P.,* 154 F.R.D. 78, 84 (S.D.N.Y.1994)(collecting cases).

### 1. Windels Marx

Windels Marx represented the Trustee in connection with the Transfer Motion, submitting a written response and appearing on the June 23, 2009 return date. According to the *Affidavit of Howard L. Simon, Counsel for Chapter 7 Trustee, with Regard to Court's Sua Sponte Order to Show Cause for Sanctions Against Kenneth Heller and Susan Harmon,* sworn to July 17, 2009 (ECF Doc. # 106), the firm expended 10.3 hours reviewing the Transfer Motion, preparing a response, and attending the hearing, and the value of those services totaled $4,849.00. *(Id.* ¶¶ 2–4.)

▉▉▉ The Simon affidavit attached the firm's contemporaneous time records as Exhibit A. The time records listed the hourly billing rate of each professional and the description and time spent on each task. The Court is familiar with the rates charged by attorneys and paralegals in this district based upon its frequent review of fee applications under 11 U.S.C. §§ 330 and 331, and the rates charged by Windels Marx, ranging between $190 and $560, with a blended hourly rate in the sum of $470.78, are reasonable. Furthermore, the services were reasonable and necessary in order to oppose the Transfer Motion. Finally, the Simon affidavit was served on Harmon and Tanenbaum in ample time to

permit a response. Accordingly, Windels Marx is awarded a fee of $4,849.00 against Heller and Harmon.

## 2. J & M

█ J & M submitted an affidavit by Mr. Lissauer, a partner in Finkelstein & Partners, L.L.P. and "of counsel" to J & M, in support of a compensatory sanctions award. (*Affidavit in Response [of Lawrence D. Lissauer]*, sworn to July 15, 2009 ("*Second Lissauer Affidavit*") (ECF Doc. # 104).)[14] He did not, however, submit contemporaneous time records. According to his submission, Mr. Lissauer bills his time at the hourly rate of $425.00, (*id.* ¶ 12), which is less than Windels Marx's mixed rate, and, therefore, reasonable. Prior to the hearing, he spent 2.5 hours reviewing the Transfer Motion, (*id.* ¶ 5), 2.5 hours preparing the opposition, (*id.* ¶ 6), and 2.8 hours reviewing his file on the day before the hearing. (*Id.* ¶ 8.) The time charges for these services aggregated $3,315.00. Given the length of the Transfer Motion and the opposition, the services were reasonable and necessary. However, in the absence of contemporaneous time records, the time attributed to these services appears to be an approximation, and warrants a 25% reduction. Accordingly, J & M is entitled to an award in the sum of $2,486.25 for these services.

█ In addition, J & M's paralegals and legal secretaries spent four hours prior to the hearing typing and pulling exhibits. (*Id.* ¶ 7.) The secretarial and paralegal time is disallowed. The affidavit only sets forth the paralegal billing rate, $100 per hour. (*Id.* ¶ 12.) This implies that J & M does not charge separately for secretarial time—it is presumably part of the overhead covered by the attorney's hourly rate. Because the affidavit combines the secretarial and paralegal services, and also indicates that paralegals may have performed secretarial work (*e.g.*, typing), it is not possible to figure out how much time was spent by a paralegal performing non-secretarial work.

Mr. Lissauer provided greater detail regarding the time spent on June 23, 2009, the return date of the Transfer Motion. Mr. Lissauer lives in Orange County, New York. He caught a 7:03 a.m. train to Grand Central Station, and arrived at Court prior to 10:00 a.m. (the matter was scheduled for that time). After the hearing concluded, he caught a 12:45 p.m. train at Grand Central Station, and arrived back at his Orange County office at 3:00 p.m. (*Id.* ¶ 8.)

The services were reasonable and made necessary by the meritless Transfer Motion. Furthermore, the detail provided by J & M is an adequate substitute for contemporaneous time records, and the award will not be reduced. Accordingly, J & M is awarded the sum of $3,400 for the time billed on June 23rd, and is entitled to an aggregate fee award of $5,886.25 as a sanction.

---

14. Michael Feldman, Esq., a J & M partner, also submitted an *Affidavit in Response,* sworn to August 6, 2009 (ECF Doc. # 120), and apparently mailed one day before August 11, 2009, the adjourned return date. The services described in this affidavit relate to the time spent litigating the Sanctions OSC rather than the Transfer Motion. Moreover, Mr. Feldman did not submit contemporaneous time records or a breakdown of services. Instead, the affidavit stated that Mr. Feldman had expended a total of ten hours on July 27 and 28 reviewing the file and attending the hearing, (*id.* ¶ 5), and anticipated spending an additional six hours on August 11th. (*Id.* ¶ 7.) The presentation of rounded estimates, especially when not accompanied by contemporaneous time records, precludes the Court from determining the reasonableness and necessity of Mr. Feldman's services. In addition, he did not file an affidavit of service. Accordingly, his affidavit will not be considered.

Finally, J & M seeks "costs of $40 in parking, subway, tolls, and train tickets to New York City." (*Second Lissauer Affidavit* ¶ 13.) No detail or breakdown is provided, and it is not, therefore, possible to determine the cost associated with each item, except for the $2.25 subway fare between Grand Central Station and the Bowling Green Courthouse. Consequently, J & M is awarded costs of $4.50 and a total award of fees and costs in the sum of $5,890.75.

J & M may only recover this sum from Harmon. According to the affidavit of service, the *Second Lissauer Affidavit* was mailed to Harmon but was not sent to Tanenbaum. Yet two days earlier, the Court had denied Heller's letter request for an adjournment based on Harmon's supposed incapacity because Heller was represented by Tanenbaum. (ECF Doc. # 103.) Under the circumstances, the failure to serve Tanenbaum was inexcusable, and denied Heller the opportunity to oppose the J & M award, whether or not he chose to take advantage of it. J & M cannot, therefore, recover an award from him.

The foregoing constitutes the Court's findings of fact and conclusions of law. Settle order on notice.