Matter of Zappin (2018 NY Slip Op 01564)





Matter of Zappin


2018 NY Slip Op 01564


Decided on March 8, 2018


Appellate Division, First Department


Per Curiam.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 8, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta,Presiding Justice,
 Rosalyn H. Richter
 Sallie Manzanet-Daniels
 Troy K. Webber
 Marcy L. Kahn,Justices.


&em;

[*1]In the Matter of Anthony Jacob Zappin, an attorney and counselor-at-law: Attorney Grievance Committee M-4661, 5804, for the First Judicial Department,5806, 6359 Petitioner, Anthony Jacob Zappin, Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Anthony Jacob Zappin, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on September 19, 2011.



Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Kevin M. Doyle, of counsel), for petitioner.
Respondent pro se.
Motion No. 4661, 5804, 5806 - December 1, 2017



PER CURIAM


Respondent Anthony Jacob Zappin was admitted to the practice of law in the State of New York by the First Judicial Department on September 19, 2011. Respondent's current [*2]registered address is in West Virginia, where he resides and is admitted to practice.
By unpublished order of October 17, 2016 (October 2016 order), this Court granted the motion of the Attorney Grievance Committee (Committee), finding respondent guilty of professional misconduct and referring the matter to a referee solely to consider evidence in mitigation or aggravation, and thereafter to recommend an appropriate sanction. The Committee sought, and this Court issued, an order pursuant to the doctrine of collateral estoppel based upon the February 29, 2016 order and decision issued in respondent's divorce and custody action (Zappin v Comfort, Sup Ct, NY County, Cooper, J., index No. 301568/14). Supreme Court's 100-page decision and order had granted respondent's wife sole custody of the couple's then two-year-old son and found that respondent, a pro se litigant: had repeatedly perpetrated acts of domestic violence against his wife; had testified falsely at a custody trial; had knowingly introduced falsified evidence during the proceedings in the form of altered text messages; had presented misleading testimony through his expert witnesses; had, beginning in April 2014, engaged in acts that repeatedly demonstrated disrespect for the court and counsel, by, inter alia, flouting the judicial directives of three judges (a judge of the District of Columbia Superior Court, the original matrimonial judge and the matrimonial judge who made these findings [matrimonial judge]), setting up a fake website about the attorney for the child by registering her name as a domain name and posting derogatory messages about her on it, and baselessly filing a disciplinary complaint against a court-appointed psychiatric expert witness. Additionally, Supreme Court found that respondent had sent text messages to his wife, an attorney, threatening her with loss of her license to practice law and professional ruin; had made grossly offensive remarks during cell phone conversations with his then three-month-old son in which he baselessly accused his father-in-law of being a child sexual abuser who could harm the child; had engaged in frivolous and abusive litigation against his wife, her parents, and her attorneys; and had attempted to publicly defame the attorney for the child. Based on Supreme Court's decision, applying the doctrine of collateral estoppel, this Court found that respondent had violated New York Rules of Professional Conduct (22 NYCRR 1200.0) rule 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation); rule 8.4(d) (conduct prejudicial to the administration of justice); rule 3.1 (frivolous litigation); rule 3.3(a)(1) (knowingly make a false statement of fact or law to a tribunal); rule 3.3(a)(3) (knowingly use or offer false evidence); rule 3.3(f)(2) (undignified or discourteous conduct before a tribunal); and rule 8.4(h) (other conduct adversely reflecting on fitness as a lawyer), and directed that a sanction hearing be held.
On December 19, 2016, the sanction hearing was held before a Referee, who recommended that respondent be disbarred. Before the Referee, the Committee read into the record a February 19, 2016 deposition it conducted of respondent in which he admitted that in January 2014 he filed a report with the D.C. police accusing his former wife of perpetrating acts of domestic violence against him, which accusations Justice Cooper found to be entirely unfounded. As mitigation evidence, respondent introduced a limited portion of his deposition testimony in which he made reference to the fact that he was in counseling during his senior year in college and again sporadically while in law school, that he took antidepressants while in college, and in high school, he volunteered with the homeless. He also introduced a letter from his therapist, in which she stated that she had sporadically treated respondent over the course of two years but starting in April 2016 he consistently attended therapy on a biweekly basis. He also introduced four letters from character witnesses, and maintained that any misconduct on his part occurred solely in the context of his custody dispute.
The Referee rejected respondent's mitigation evidence, finding incredible respondent's accusations of domestic violence by his then-former wife, noting their rejection by both the D.C. police and the courts in D.C. and New York; that respondent's deposition testimony as to the sporadic counseling he received in law school and his occasionally taking antidepressants while in college did not constitute mitigation; that his charitable work was insignificant; and that his therapist's letter and the similarly worded letters of four character witnesses provided no basis for mitigation. The Referee opined that while respondent's good conduct during the sanction [*3]hearing supported his contention that his disruptive courtroom behavior was confined to the custody litigation, nonetheless, such good behavior is required of lawyers at all times and, thus, did not mitigate his prior misconduct.
As to his ultimate conclusion, the Referee opined:
"[Respondent's] numerous instances of misbehavior may have all occurred in the same litigation, but it was extensive and unbridled. He accused and abused three judges in two states, lied continuously, condoned others' perjury, altered documents, physically abused his wife, and more, during years of litigation. There are no significant mitigating circumstances, but [respondent's] lack of remorse and evident lack of respect for the judicial process are serious aggravating factors. The record demonstrates [respondent's] unfitness for the practice of law, from which the public should be protected by ordering his disbarment."
The Committee now moves this Court to affirm the Referee's report and recommendation of disbarment. The Committee argues that respondent's misconduct in terms of its scope, duration, ferocity, and maliciousness, coupled with his failure to admit any wrongdoing whatsoever, even in the face of this Court's prior finding of guilt, demonstrates that he is presently unfit to practice law. The Committee has not submitted a memorandum of law but relies on the parties' posthearing submissions to the
Referee.
Respondent opposes the motion and has additionally filed three motions seeking affirmative relief. The first motion (M-5804) seeks vacatur of our October 2016 order finding him guilty of professional misconduct, finding it constitutionally infirm, and requests a hearing before a different referee and transfer of the matter to a different Judicial Department of the Appellate Division, due to alleged conflicts on the part of members of this Court [FN1] (vacatur motion); the second (M-5806) seeks vacatur of that same order on the basis of his allegations of fraud on the part of the Committee, an order directing the Committee to produce all exculpatory documents in its possession, transference of this matter to another Attorney Grievance Committee, a stay of this proceeding pending resolution of the motion and imposition of sanctions against the Committee's counsel (fraud motion); and the third (M-6359) seeks vacatur of certain misconduct findings in our collateral estoppel order, a new sanctions hearing, an order striking the Committee's reply in support of its motion to affirm the Referee's report and imposition of sanctions against the Committee's counsel (sanctions motion).
In support of his position opposing his disbarment, respondent argues that it would be fundamentally unfair to discipline him pursuant to the doctrine of collateral estoppel and that this matter should be remanded to the Committee for investigation and the filing of formal charges, if warranted. He further maintains that he was not given notice and a full and fair opportunity to be heard in the custody litigation. These same arguments were previously raised before us and rejected in our October 2016 order.
Respondent next contends that Supreme Court's findings were biased and that the [*4]underlying proceedings were constitutionally tainted. This argument is refuted by our affirmance of Supreme Court's decision in respondent's custody case (see Zappin v Comfort, 155 AD3d 497 [1st Dept 2017], supra). Respondent also urges that he should not be disciplined based on Supreme Court's findings because the New York City Bar Association (NYCBA) has taken the position that only "extreme circumstances" warrant giving collateral estoppel effect to a prior order; that the Committee proceeded by way of a collateral estoppel motion because the Committee knew formal charges based on the conduct at issue would not be sustained; that he has no prior disciplinary history and has never been the subject of misconduct allegations related to his private practice of law; that subsequent to the entry of final judgment in his divorce/custody case he has not engaged in any misconduct; and that he has completely cooperated with the Committee, whose staff counsel, respondent alleges, has engaged in prosecutorial and ethical misconduct.
The Committee replies that this Court's determination to give collateral estoppel effect to Supreme Court's decision in respondent's custody case has already been made and that respondent's argument misstates both NYCBA's position and the law. Further, the Committee asserts that there has been no misconduct on its part and that respondent's characterization of his own lack of misconduct is incredible, given that in March 2017 respondent had been charged with falsely reporting an incident by accusing the matrimonial judge of spitting and swearing at him when, in fact, by respondent's own admission in the criminal case it was respondent who had engaged in threatening behavior toward the matrimonial judge. The Committee notes that respondent pled guilty to a charge of disorderly conduct for which he received a sentence of three days of community service and waived sealing of the records. As another example of respondent's lack of candor, the Committee cites a June 27, 2016 court appearance during which respondent accused the matrimonial judge of assaulting his wife and then denied making the accusation even after the transcript of his remarks was three times read back to him. The Committee further maintains that the additional aggravation findings specified by the Referee were based on the ABA Standards for Imposing Lawyer Sanctions, which the Referee could consider under the new Rules for Attorney Disciplinary Matters (Disciplinary Rules) (see 22 NYCRR 1240.8[b][2]) and were fully supported by the record. The Committee contends that any errors made by the Referee were not significant and urges disbarment, notwithstanding respondent's lack of a criminal record, due to his egregious conduct.
On a motion to affirm a referee's report and recommendation, this Court must review the referee's report and determine whether the referee properly found, "by a fair preponderance of the evidence, each essential element of the charge[s]" (22 NYCRR 1240.8[b][1]). With respect to reviewing the referee's report and recommendation to determine whether the referee recommended the appropriate discipline for the misconduct, the Disciplinary Rules provide:
"(2) Discipline. In presenting arguments on the issue of appropriate discipline for misconduct, the parties may cite any relevant factor, including but not limited to the nature of the misconduct, aggravating and mitigating circumstances, the parties' contentions regarding the appropriate sanction under the American Bar Association's Standards for Imposing Lawyer Sanctions, and applicable case law and precedent. Upon a finding that any person covered by these Rules has committed professional misconduct, the Court may impose discipline or take other action that is authorized by law and, in the discretion of the Court, is appropriate to protect the public, maintain the honor and integrity of the profession, or deter others from committing similar misconduct"(22 NYCRR 1240.8[b][2]).
As stated above, in this case, having already found respondent guilty of professional misconduct as reflected in our October 2016 order, we referred this matter to the Referee for the limited purposes of considering the record evidence in aggravation and mitigation, and thereafter recommending an appropriate sanction. Thus, on this motion, our review is limited to whether the Referee's report and recommendation comply with our directive and the Disciplinary Rules [*5](see 22 NYCRR 1240.8[b][2]).
This record in this case is replete with numerous egregious and outrageous acts of misconduct perpetrated by respondent over the course of a four-year period, including his repeated acts of domestic violence toward his wife; his false testimony at the custody trial; his introduction of falsified evidence in the form of altered text messages; his presentation of misleading testimony through his expert witnesses; his flouting the directives of three judges; his setting up of a fake website about the attorney for the child in the custody action and posting derogatory messages about her on it; his baseless filing of a disciplinary complaint against a court-appointed psychiatric expert; his threatening text messages directed to his wife; his cell phone calls to his then three-month-old son baselessly accusing his father-in-law of being a child sexual abuser who could harm him; his engagement in frivolous litigation against his wife, her parents, and her attorneys; his attempted defamation of the attorney for the child; and his filing of a police report falsely accusing his wife of committing acts of domestic violence. Notwithstanding the repeated acts of egregious misconduct respondent has committed over the course of several years, he has neither demonstrated any remorse nor any acceptance of responsibility for his intolerable actions. This long list of aggravating factors, and the lack of mitigating factors weighing in respondent's favor, fully support the Referee's recommendation that respondent be disbarred.
The applicable case law also fully supports respondent's disbarment here (see e.g. Matter of Gen, 29 AD3d 230, 234-235 [1st Dept 2006]; Matter of Truong, 22 AD3d 62, 67 [1st Dept 2005], appeal dismissed 6 NY3d 799 [2006]; Matter of Heller, 9 AD3d 221, 224-228 [1st Dept 2004], lv denied 3 NY3d 607 [2004]; Matter of Robb, 287 AD2d 1, 4-5 [1st Dept 2001]; Matter of Klapper, 253 AD2d 72, 75-76 [1st Dept 1999]; Matter of Friedman, 196 AD2d 280, 296-297 [1st Dept 1994], appeal dismissed 83 NY2d 888 [1994], cert denied 513 US 820 [1994]; Matter of Padilla, 109 AD2d 247 [1st Dept 1985], appeal dismissed 67 NY2d 870 [1986].
Having reviewed the aggravating and mitigating circumstances presented in the record and applicable case law and precedent,[FN2] we conclude that disbarment is the appropriate sanction "to protect the public, maintain the honor and integrity of the
profession, or deter others from committing similar misconduct" (22 NYCRR 1240.8[b][2]). Therefore, we agree with and adopt the Referee's recommendation that respondent be disbarred.
Accordingly, the Committee's motion for an order affirming the Referee's findings of fact and conclusions of law should be granted and respondent disbarred.
Respondent's vacatur motion is without merit, as respondent has not presented any credible support for his claims of lack of due process, conflicts of interest or bias on the part of this Court in rendering its October 2016 order. Respondent cannot bring suit against all of the members of this Court and then claim conflicts of interest on the part of its members warranting transfer of this disciplinary matter to another Judicial Department. In any event, in disciplinary matters such as this, we may, in the exercise of our discretion, grant collateral estoppel effect to findings made in earlier actions, which need not be criminal in nature (see e.g. Matter of Taylor, 113 AD2d 56, 57-58 [1st Dept 2013]; Matter of Yao, 231 AD2d 346 [1st Dept 1997]). Here, our [*6]ruling is amply justified by respondent's having had a full and fair opportunity to litigate the findings made in the custody trial, as well as his history of employing abusive litigation tactics and the likelihood that he would have done so again, in an effort to delay both the appeal of Supreme Court's custody decision and the instant disciplinary proceeding, had this Court not entered its order.
Equally lacking in merit is respondent's fraud motion, as there is no credible support for respondent's allegations of fraud or misconduct on the part of the Committee or its counsel.
With respect to respondent's sanctions motion, respondent's argument that partial vacatur of the misconduct findings is necessitated by this Court's not having considered certain of those findings, thereby depriving him of a full and fair opportunity to litigate them, is based on his misreading of a portion of the language we used in affirming Supreme Court's custody order. Specifically, we opined, with respect to Supreme Court's "rulings in connection with the custody trial[,]" that "[i]n any event, any claimed error would not warrant a different custody determination" (Zappin v Comfort, 155 AD3d at 499). As respondent acknowledges, we did not vacate any of those findings, but found them "fair and impartial, and . . . based in part on credibility determinations that have support in the record" (155 AD3d at 500). Respondent's requests to vacate the Referee's report and to impose sanctions on the Committee's counsel are similarly without merit, lacking any credible support in the record.
Accordingly, each of respondent's motions for affirmative relief are denied.
Respondent is disbarred and his name stricken from the roll of attorneys and counselors-at-law in the State of New York,
effective the date hereof.
All concur.
Order filed. [March 8, 2018]
Ordered that each of respondent's motions for affirmative relief are denied, respondent is disbarred and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof.



Footnotes

Footnote 1: Respondent's conflicts rationale included the participation of Justices of this Court in affirming the underlying custody decision (Zappin v Comfort, 155 AD3d 497 [1st Dept 2017]); in deciding the October 2016 collateral estoppel decision while the appeal of the custody decision was pending; and in one instance, serving on the Commission on Judicial Conduct at the time of respondent's filing of a complaint with that body against the matrimonial judge. Respondent has more recently commenced an action in federal court against all of the Justices of this Court, both of the matrimonial judges who handled his divorce action, and the chair and staff attorney of the Committee.

Footnote 2: To the extent that the parties' contentions are based upon the American Bar Association's Standards for Imposing Lawyer Sanctions (ABA Standards), we find that respondent's acts of professional misconduct, considered through the lens of the ABA Standards, favor disbarment (see ABA Standards §§ 4.61 [Lack of Candor], 5.11 [Failure to Maintain Personal Integrity], 6.11 [False Statements, Fraud, Misrepresentation], 6.21 [Abuse of the Legal Process], 6.31 [Improper Communications with Individuals in the Legal System], 9.0 et seq. [Aggravation and Mitigation]).